**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:18-CV-00086-GCM**

| | | |
|---|---|---|
| **JAMES A. ROBICHAUD,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **ENGAGE2EXCEL, INC** | ) | |
| **COMVEST INVESTMENT PARTNERS** | | |
| **HOLDINGS, LLC** | | |
| **U.S. BANK, N.A.** | | |
| **E2E HOLDINGS, INC** | | |
| **PHILLIP STEWART** | | |
| **GC REPRESENTATIVE COMPANY,** | | |
| **LLC,** | | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER COMES** before this Court on Defendants Engage2Excel, Inc. ("E2E"),

Comvest Investment Partners Holdings, LLC ("Comvest"), E2E Holdings, Inc. ("E2E Holdings"),

and Philip Stewart's ("Stewart") (E2E, Comvest, E2E Holdings, and Stewart collectively "E2E

Defendants") Motion to Dismiss (Doc. No. 23) and Defendant GC Representative Company,

LLC's ("GC") Motion to Dismiss (Doc. No. 25). Plaintiff James Robichaud ("Plaintiff")

responded to both Motions and both the E2E Defendants and GC (collectively "Defendants")

replied. Thus, this matter is ripe for disposition.

## I.      FACTUAL BACKGROUND

For purposes of this Motion, the Court accepts the facts in the Amended Complaint as true.

Those facts serve as the factual basis for this Order.

Plaintiff worked as an independent distributor for E2E until December 29, 2016. (Amend.

Compl. ¶32). E2E operated in the human resources solutions industry. (*Id.* at ¶31). When Plaintiff

left his employment with E2E, E2E offered Plaintiff a buyout in exchange for a non-compete agreement. (*Id.* at ¶33). Plaintiff refused the buyout as Plaintiff intended to remain within the same industry. (*Id.* at ¶33, 34). Despite leaving E2E, Plaintiff remained a minority stockholder in the company. (*Id.* at ¶12, 13).

After leaving the employ of E2E, Plaintiff founded Global Engagement Solutions ("GES"). (*Id.* at ¶1). GES became a direct competitor of E2E in February of 2017. (*Id.* at ¶35). In June of 2017, a significant client of E2E moved its business from E2E to GES. (*Id.* at ¶37). Defendants knew of Plaintiff's involvement with GES. (*Id.* at ¶36).

E2E merged with Comvest via a reverse triangular merger. (*Id.* at ¶38). The merger extinguished all of Plaintiff's shares in E2E. (*Id.* at ¶12). The Board of Directors and a majority of the stockholders of E2E approved the merger. (*Id.* at ¶40). Plaintiff did not vote in favor of the merger. (*Id.* at ¶41).

After Comvest and E2E completed the merger, Defendants sent out Letters of Transmittal to the stockholders of E2E. (*Id.* at ¶44). The Merger Agreement provided a form Letter of Transmittal. (*Id.* at ¶43). According to the Merger Agreement, a stockholder entitled to merger consideration may receive the consideration upon the surrender of their shares and execution of the Letter of Transmittal. (*Id.* at ¶44). Despite the inclusion of a form Letter of Transmittal in the Merger Agreement, Defendants sent Plaintiff a Letter of Transmittal that contained non-compete and non-solicitation clauses. (*Id.* at ¶46). Plaintiff was the only squeezed-out stockholder to receive these restrictions in their Letter of Transmittal. (*Id.* at ¶47). Defendants continue to withhold Plaintiff's merger consideration until Plaintiff provides the Letter of Transmittal including the non-compete and non-solicitation clauses.

## II.     STANDARD OF REVIEW

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the plaintiff must include within his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

As a result of Defendants' actions, Plaintiff sued Defendants claiming: (1) Violation of the North Carolina Unfair and Deceptive Trade Practices Act, (2) Violation of the Wisconsin Deceptive Trade Practices Act, (3) Civil Conspiracy, (4) Fraud, (5) Unjust Enrichment, (6) Punitive Damages, (7) Declaratory Judgment, and (8) Injunctive Relief. The Court will discuss each cause of action below delineating between which Defendant is specifically being sued to the extent such a distinction becomes relevant.

### a. Violation of the North Carolina Unfair and Deceptive Trade Practices Act

First, Plaintiff claimed that Defendants' act of withholding Plaintiff's merger consideration constituted a violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). N.C. Gen. Stat. § 75-1.1, *et seq*. In order to state a claim under the NCUDTPA, a plaintiff must allege: "(1) the defendant engaged in conduct that was in or affecting commerce, (2) the conduct was unfair or had the capacity or tendency to deceive, and

(3) the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." *Belk Inc., v. Meyer Corp., U.S.*, 679 F.3d 146, 164 (4th Cir. 2012) (internal quotations omitted). North Carolina courts have held that the NCUDTPA does not apply to securities transactions. *Skinner v. E.F. Hutton & Co.*, 333 S.E.2d 236, 241 (N.C. 1985). In holding that securities transactions were outside the scope of the NCUDTPA, the North Carolina Supreme Court reasoned that securities transactions were

> subject to pervasive and intricate regulation under the North Carolina Securities Act, N.C. Gen. Stat. § 78A-1 *et seq.* (1981), as well as the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (1982), and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (1982). Furthermore, to hold that § 75-1.1 applies to securities transactions could subject those involved with securities transactions to overlapping supervision and enforcement by both the North Carolina Attorney General, who is charged with enforcing § 75-1.1, and the North Carolina Secretary of State, who is charged with enforcing the North Carolina Securities Act.

*Id.* (quoting *Lindner v. Durham Hosiery Mills, Inc.,* 761 F.2d 162, 167-68 (4th Cir.1985)).

The North Carolina Supreme Court further discussed the securities exception to the NCUDTPA in *The HAJMM Co. v. House of Raeford Farms, Inc.* 328 N.C. 578, 594 (1991). In *HAJMM*, the North Carolina Supreme Court stated that the "in commerce" element meant regular day-to-day business activities of a business "such as the sale or purchase of goods, or whatever other activities the business regularly engages in and for which it is organized." *Id.* The Court went on to state that

> The issuance of securities is an extraordinary event … not a business activity of the issuing enterprise. Similarly, retirement of the security by the issuing enterprise simply removes the security from the capital structure. Like issuance and transfer of the security, retirement is not a business activity which the issuing enterprise was organized to conduct.

*Id.*

Applying controlling North Carolina law to the facts of this case, the Court finds that the securities exception applies and bars Plaintiff's NCUDTPA claim. Plaintiff premises his claim upon the alleged unlawful withholding of his merger consideration. Plaintiff attempts to avoid the securities exception by arguing that the withholding of merger consideration is an attempt to prevent a competitor from expanding in the marketplace. According to Plaintiff "there is no question that competitive behavior and marketplace participation—or the restriction thereof—is conduct in or affecting commerce." (Doc. No. 32, p. 17).

The Court finds this argument unpersuasive. The resolution of the NCUDTPA claim requires the Court to determine if Defendants' actions were unfair or deceptive. To make that determination, the Court will be required to delve into Delaware corporate law along with other related securities law. Thus, the actions at issue in this case are already subject to "pervasive and intricate regulation" as discussed in *Skinner*. 333 S.E.2d at 241. The pervasive regulation weighs in favor of holding that the securities exception applies.

The Court further finds that the acts alleged in this case are not regular day-to-day business activities and are thus not "in or affecting commerce." *HAJMM*, 328 N.C. at 594. Rather, the acts involve a "sophisticated transaction engineered by sophisticated parties." (Amend. Compl. ¶12). Every act pertinent to the resolution of this matter is an extraordinary event outside the scope of the NCUDTPA. To wit, the merger, the issuance of Letters of Transmittal, and the conditions precedent contained within the Letters all are extraordinary events that are not in or affecting commerce as contemplated under the NCUDTPA.

The North Carolina Business Court dealt with a strikingly similar factual scenario in *Tillery Environmental, LLC v. A&D Holdings, Inc.*, 17CVS6525, 2017WL3335764 (N.C. Sup. Ct. Aug. 4, 2017) (Bledsoe, J.). In *Tillery*, the plaintiff alleged that the defendant attempted to

improperly claim escrow funds over a year after the close of the subject merger. *Tillery*, 2017WL3335764 at *5. The North Carolina Business Court opined that post-merger actions that happened nearly "eighteen months after the securities transaction closed" fell within the securities exception to the NCUDTPA. *Id.* at *5-6. The Court reasoned that "Defendants' conduct is inextricably tied to the sale of securities and the Stock Purchase Agreement." *Id.* at *6. In the case at bar, Defendant's conduct also is "inextricably tied" to a securities transaction. While *Tillery* may not be binding, the Court finds the decision highly persuasive and chooses to follow its reasoning and holding.

As such, the Court finds that the securities exception applies to this case. Because the securities exception applies, Defendants' Motion to Dismiss Plaintiff's NCUDTPA claim is **GRANTED**.

### b. Violation of the Wisconsin Deceptive Trade Practices Act

Plaintiff's next cause of action alleged a violation of the Wisconsin Deceptive Trade Practices Act ("WDTPA"), Wis. Stat. § 100.18(1). In order to state a claim under the WDTPA, a plaintiff must allege "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was untrue, deceptive or misleading, and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Brainstorm Interactive, Inc. v. Sch. Specialty, Inc.*, No. 14–cv–50–WMC, 2014 WL 6893881, at *17 (W.D. Wis. Dec. 5, 2014) (Conley, J.) (internal quotations omitted). While one person may constitute a member of the "public" in certain instances, a statement made to a person with a "particular relationship" to the defendant is not a statement made to the public. *See Uniek, Inc. v. Dollar General Corp.*, 474 F.Supp.2d 1034, 1037-38 (W.D. Wis. 2007); *but see State v. Automatic Merchandisers of Am., Inc.*, 221 N.W.2d 683, 686 (Wis. 1974) ("The important factor is whether

there is some particular relationship between the parties."). Parties to a contract have a particular relationship. *Kailin v. Armstrong*, 643 N.W.2d 132, 149 (Wis. Ct. App. 2002) ("We see no indication in the language of § 100.18(1) that the legislature intended to address untrue, deceptive, or misleading assertions, representations, or statements of fact made by one party to another after they have entered into a contract.")

Applying the above standard to the case at bar, the Court finds that Plaintiff is not a member of the public for purposes of the WDTPA. Plaintiff complains of post-merger actions of Defendants. The post-merger actions happened *after* Plaintiff became a stockholder in E2E. The Supreme Court of Wisconsin, in *Kailin*, held that the WDTPA is not intended to cover the Parties' actions after they enter into a contract. The Court finds that the Parties had a particular relationship. Thus, Plaintiff is not a member of the public and therefore cannot state a claim under the WDTPA. As such, Defendants' Motion to Dismiss the WDTPA claim is **GRANTED**.

### c. Fraud

Next, Plaintiff sued E2E alone for fraud. To establish fraud in North Carolina, a plaintiff must allege a: "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974) (internal citations omitted). In addition, the Federal Rules of Civil Procedure require that a party claiming fraud plead that cause of action with particularity. Fed. R. Civ. Pro. 9(b).

Even assuming that Plaintiff pled the fraud claim with sufficient particularity, Plaintiff failed to plead facts supporting the fourth and fifth elements. First, Plaintiff failed to plead facts that establish reliance. In this case, Plaintiff alleged that he recognized that his Letter of Transmittal was different. Plaintiff recognized that his Letter of Transmittal contained non-

compete and non-solicitation clauses. Thus, even if E2E's statement that Plaintiff must sign the Letter of Transmittal provided to him in order to receive merger consideration was false, Plaintiff did not rely upon that statement. Thus, Plaintiff cannot maintain a claim for fraud.

Additionally, Plaintiff failed to plead any facts to support damages arising from the alleged fraudulent act. Plaintiff's damages in this case arise from the withholding of the merger consideration, not any alleged fraudulent statements made by E2E. While Plaintiff strenuously argues in brief that it was the statements that caused the damages, the facts alleged in the Amended Complaint make it clear to the Court that the act of withholding the merger consideration, in fact, caused the damages. As such, Plaintiff failed to plead facts supporting the fifth element of the claim. Because Plaintiff failed to plead facts to support both the fourth and fifth elements of his fraud claim, Defendants' Motion to Dismiss the fraud claim is **GRANTED**.

### d. Civil Conspiracy

Plaintiff also sued Defendants for civil conspiracy. In order to state a claim for civil conspiracy, a plaintiff must allege: "an overt act committed by one or more of the conspirators pursuant to a common agreement and in furtherance of a common objective." *Dickens v. Puryear*, 276 S.E.2d 325, 337 (N.C. 1981). "The common law action for civil conspiracy is for damages caused by acts committed pursuant to a conspiracy rather than for the conspiracy, i. e., the agreement, itself." *Id.* (internal citations omitted). Thus, North Carolina law requires an underlying tort in order to state a claim for civil conspiracy. *Eli Research, Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 763 (M.D.N.C. 2004).

Here, Plaintiff failed to plead an underlying tort. The Court has already dismissed Plaintiff's NCUDTPA claim, WDTPA claim, and fraud claim. Plaintiff did not allege any other torts in his Amended Complaint. Thus, Plaintiff's civil conspiracy claim must be dismissed for

want of an underlying tort. Defendants' Motion to Dismiss the civil conspiracy claim is **GRANTED**.

### e. Unjust Enrichment, Punitive Damages, and Injunctive Relief

Plaintiff also sued Defendants for unjust enrichment, punitive damages, and injunctive relief. In Plaintiff's response, Plaintiff did not object to the dismissal of his unjust enrichment claim. As such, the Court **GRANTS** Defendants' Motion to Dismiss as it pertains to the unjust enrichment claim.

Plaintiff also agreed that his claim for punitive damages was a remedy rather than a stand-alone cause of action. Therefore, the Court will also **GRANT** Defendants' Motion to Dismiss as it pertains to the claim for punitive damages.

Finally, Plaintiff sued Defendants for injunctive relief. While the Parties each briefed the merits of a permanent injunction, the Court will not reach the merits at this stage. Injunctive relief is not a separate cause of action; rather, an injunction is a remedy to be considered once liability attaches. Plaintiff has not filed a motion for temporary restraining order or preliminary injunction. Rather, Plaintiff included within the Amended Complaint a separate cause of action for a permanent injunction. To the extent Plaintiff intended injunctive relief to be a separate cause of action, Defendants' Motion to Dismiss that claim is **GRANTED**. The Court will consider injunctive relief as a remedy if liability is found at a later time.

### f. Declaratory Judgment

Plaintiff also sued Defendants seeking declaratory judgment as to his rights in the merger consideration. Declaratory judgment is appropriate if a plaintiff shows "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the

parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Constr. Equip. N. Am. Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation omitted).

Here, Plaintiff sufficiently pled a plausible claim for declaratory judgment against all Defendants. First, Plaintiff alleged an actual controversy between the Parties. An actual controversy is one that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *McAllister v. Malfitano*, Case No. 7:17-CV-66-D, 2018 WL 2016311, at *2 (E.D.N.C. Apr. 30, 2018) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). Plaintiff alleged that Defendants wrongfully withheld $140,000.00 in merger consideration.  A declaration of rights in wrongfully withheld property is the epitome of an actual, concrete controversy between two parties.

The Court also has an independent basis for jurisdiction in this case. To wit, the Parties maintain complete diversity of citizenship, and the amount in controversy exceeds $75,000.00. Thus, diversity jurisdiction is appropriate in this case. *See* 28 U.S.C. §1332. The Court also finds that it is not an abuse of discretion to exercise jurisdiction over this matter. Therefore, Plaintiff has stated a plausible claim for declaratory judgment.

Defendant GC argues that Plaintiff lacks standing to assert a claim for declaratory judgment against GC. The crux of GC's argument is the Merger Agreement did not allow GC to control the transfer of merger consideration so GC cannot possibly be responsible for any damage to Plaintiff. In order to have standing to bring suit against GC, Plaintiff must show (1) that he suffered an actual or imminent injury, (2) that is fairly traceable to GC, and (3) that is likely to be redressed by the relief requested. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998). The Court finds, that on the record currently before this Court, Plaintiff

has standing to seek declaratory judgment against GC. Plaintiff alleged that GC was complicit in the improper withholding of Plaintiff's merger consideration. GC disputes this claim. While GC may ultimately be able to show that it was in fact not complicit in Plaintiff's injury, at this stage the record supports an actual injury traceable to GC. Further, if GC participated in the wrongful withholding of the merger consideration, declaratory judgment against all Defendants, including GC, would redress that injury. Thus, the Court finds that Plaintiff has standing to sue GC seeking declaratory judgment.

For the reasons stated above, Defendants' Motions to Dismiss the declaratory judgment action are **DENIED**.

## IV.     CONCLUSION

For the aforementioned reasons, Defendants' Motions to Dismiss (Doc. Nos. 23, 25) are **GRANTED IN PART** and **DENIED IN PART**. The Motions are **GRANTED** as to the NCUDTPA claim, WDTPA claim, fraud, civil conspiracy, unjust enrichment, punitive damages, and injunctive relief. The Motions are **DENIED** as to the declaratory judgment claim.

**SO ORDERED**.

Signed: May 9, 2019

Graham C. Mullen
United States District Judge